

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-164

| | |
|---|---|
| CITY OF TONTITOWN, ARKANSAS<br>APPELLANT | **Opinion Delivered** May 24, 2017 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72CV-14-2304] |
| FIRST SECURITY BANK<br>APPELLEE | HONORABLE DOUG MARTIN,<br>JUDGE |
| | AFFIRMED |

### N. MARK KLAPPENBACH, Judge

The City of Tontitown appeals from an order of the Washington County Circuit Court finding that it had failed to take substantial steps to provide requested municipal services to property owned by appellee First Security Bank (the Bank). On appeal, Tontitown argues that the circuit court lacked subject-matter jurisdiction in this matter, that the circuit court erred in granting judgment to the Bank, and that the circuit court erred in refusing to rule on Tontitown's Rule 52(b) motion. We affirm.

The Bank owned property in Tontitown that bordered Springdale on its eastern boundary and Highway 412 on its northern boundary. The northern 15.64 acres was zoned commercial and partially developed; the southern 22.9 acres was zoned residential and was undeveloped. The Bank sought to detach its property from Tontitown and seek annexation into Springdale under the detachment-annexation statutes, codified at Arkansas Code Annotated sections 14-40-2001 et seq. (Repl. 2013 & Supp. 2015), which provide the

procedure for the annexation of land into an adjoining municipality in order to obtain municipal services.[1]  Before annexation is allowed, the municipality in which the land is located shall have an opportunity to provide the additional services.  Ark. Code Ann. § 14-40-2002(a)(2).  Pursuant to this statute, the Bank sent a letter to the mayor of Tontitown in August 2014 requesting that Tontitown commit to providing the additional services of adequate fire protection, adequate police protection, adequate ambulance services, water and sewer services, and a public road.

Arkansas Code Annotated section 14-40-2002(b)(1)(D) provides that within thirty days of the request, the municipality must make a commitment in writing to the landowner to take substantial steps, within 180 days, toward providing the additional services and, within each thirty-day period thereafter, to continue taking steps to demonstrate a consistent commitment to provide the service within a reasonable time, as determined by the kind of services requested.  The landowner must take appropriate steps to make the land accessible to the service and comply with reasonable requests of the municipality that are necessary for the service to be provided.  Ark. Code Ann. § 14-40-2002(b)(1)(D)(iii).  The landowner may request the annexation of the land into the other municipality and thereby detach the land from the boundaries of the municipality in which the land is currently located if the municipality in which the land is located fails to execute a commitment to services within

---

[1]Act 779 of 1999 is codified at Arkansas Code Annotated sections 14-40-2001 to -2002.  In 2001, the Arkansas General Assembly amended section 14-40-2002 and added sections 14-40-2003 to -2005.  *See* Act 1525 of 2001.

thirty days after the statement is filed or the municipality executes the commitment to services but fails to take the action required under subdivision (b)(1)(D) of this section. Ark. Code Ann. § 14-40-2002(b)(2).

Tontitown responded within thirty days with a letter reciting its commitment to take substantial steps toward providing the additional services as required by the statute. The letter then stated that Tontitown "has already made all of the requested services available to the referenced property." The letter further stated in part that

> [t]he City is fully committed to providing the requested services to the property. As such, it is requested that a more definite statement be filed with the City, specifically describing the nature and scope of each of the services mentioned in your statement, and which you are not currently receiving. Though all of the requested services are currently available to the property, the City requires more information to ensure that the services are properly provided and to correctly inform First Security Bank of the costs and duties associated with their provision, and for which it will be responsible. Lastly, if First Security Bank believes that any of the services provided are inadequate, please also include a more definite statement that specifically describes the nature and scope of each perceived inadequacy.

The Bank did not respond to the letter. In December 2014, the Bank filed a petition for declaratory judgment against Tontitown. The Bank detailed its difficulties in selling the property due to Tontitown's allegedly inadequate municipal services and claimed that Springdale was willing to annex the property and provide the requested services. The Bank claimed that Tontitown's contradictory letter did not constitute a commitment as required by Arkansas Code Annotated section 14-40-2002(b)(1)(D). Alternatively, if Tontitown had made a commitment, the Bank alleged that Tontitown had failed to begin taking any steps within 180 days as required by the statute. The Bank requested a declaratory judgment that

SLIP OPINION

Tontitown had failed to comply with Arkansas Code Annotated section 14–40–2002(b)(1)(D) under either alternative and that the Bank was thus entitled to detach the property and seek annexation into Springdale.

A bench trial was held in September 2015. Tonya Patrick, a vice president at the Bank, testified that the Bank obtained the property through a foreclosure action in 2011 and that responses from potential buyers indicated that it was a "dealbreaker" that the property was located in Tontitown. She said that some services were not provided by Tontitown and some were not up to the caliber of services provided by Springdale and that this detracted from the value of the property. Patrick said that Tontitown had not taken any steps to fulfill the commitment it had made. She testified that the Bank had obtained water and sewer services for the improved commercial portion of the property only after the Bank paid to have a sewer line installed along Highway 412 up to the property and then onto the property. She said that Tontitown had not been able to provide the sewer line up to the Bank's property.

Jack Beckord, the mayor of Tontitown when the Bank's request was made, testified that he did not think there were any services not being provided. He did not contact the city's department heads to discuss the services when he received the Bank's request. Paul Colvin, Tontitown's mayor since January 2015, testified that specific requests had not been made for work on the property. James Clark, public works director for Tontitown, testified that he was not asked by either mayor to respond to the Bank's request and that there had

been no new services provided to the property.

The circuit court entered an order granting declaratory judgment to the Bank, finding that although Tontitown's letter constituted the required written commitment, Tontitown had thereafter failed to comply with section 14-40-2002 because it did not take any steps toward providing the services. The court specifically found that Tontitown's request for a more definite statement from the Bank was not a substantial step required by the statute and did not shift the onus regarding services back to the landowner.

We first address Tontitown's argument that the circuit court lacked subject-matter jurisdiction. Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Perroni v. Sachar*, 2017 Ark. 59, 513 S.W.3d 239. It is well settled that subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Id*. A court obtains subject-matter jurisdiction under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules. *Id*. An Arkansas court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Id*. Circuit courts have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the constitution. Ark. Const. amend. 80, § 6(A).

We determine whether a court has subject-matter jurisdiction based on the pleadings. *Perroni, supra*. The first paragraph of the Bank's pleading states that "[t]his Court has jurisdiction over this matter, and venue is properly in the Court pursuant to Ark. Code Ann.

5

SLIP OPINION

§ 14-40-2004(a)." The cited statute provides that "[t]he circuit courts of the state shall have exclusive jurisdiction to hear all matters related to this subchapter." Ark. Code Ann. § 14-40-2004(a)(1). The Bank's petition sought an order declaring that Tontitown had failed to comply with the requirements of that subchapter. Arkansas Code Annotated section 14-40-2004(b)(1)(A) allows for such a petition to be brought by either affected municipality or the landowner. Even prior to the enactment of section 14-40-2004, the supreme court held that judicial review of any action taken pursuant to Act 779 was available through a declaratory-judgment action brought by a municipality or a landowner. *See City of Cave Springs v. City of Rogers*, 343 Ark. 652, 37 S.W.3d 607 (2001). Thus, we hold that the circuit court had subject-matter jurisdiction in this matter.

Tontitown next argues that the circuit court erred in granting declaratory judgment to the Bank. The standard of review on appeal from a bench trial is not whether there is substantial evidence to support the findings of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern*, 2010 Ark. 449, 374 S.W.3d 660. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are solely within the province of the fact-finder. *Id.*

Tontitown contends that it complied with its obligations under the statute because the services were already available to the property. We disagree. The evidence established

6

that while water and sewer services had been provided to the improved portion of the commercially zoned property, they had not been provided to the rest of the property.[2] Beckford, Colvin, and Clark all testified that development plans would have to be submitted in order to extend water and sewer service to the rest of the property. Beckford said that "as a rule," the city does not develop without specific plans, and Clark testified about the need for an engineer to determine the capabilities of the water and sewer systems to service developments on the residential portion of the property. Despite needing plans to move forward with making these services available, Clark testified that the city did not inform the Bank of what was needed or request that plans be filed. Rather, Tontitown took no steps after making its written commitment. Arkansas Code Annotated section 14-40-2002 requires that the city take substantial steps toward providing the requested services. We cannot say that the circuit court erred in finding that no such steps were taken.

Tontitown further claims that the Bank failed to comply with its reasonable request for a more definite statement. We agree with the circuit court, however, that Tontitown's request did not shift the onus back to the Bank. The statute requires Tontitown to go beyond its commitment letter. The evidence fails to show that Tontitown attempted to work with the Bank toward providing the services by inquiring about development plans or explaining what it needed from the Bank. Regardless of whether the other requested

---

[2]Patrick testified that the improved portion consists of eight acres and that the remaining 30.5 acres is unimproved.

services were provided or came within the statute's provisions, we affirm due to the failure to take substantial steps toward providing water and sewer services to the majority of the property.

As a final point, Tontitown argues that the circuit court erred in failing to rule on its Rule 52(b) motion requesting rulings on specific issues. Arkansas Rule of Civil Procedure 52(b)(1) provides that upon motion of a party made not later than ten days after entry of judgment, the court may amend its findings of fact previously made or make additional findings and may amend the judgment accordingly. The circuit court's order was entered on October 28, 2015, and Tontitown's Rule 52(b) motion was filed on November 13, 2015. Excluding intermediate weekends and legal holidays as required by Arkansas Rule of Civil Procedure 6(a), Tontitown's motion was filed on the eleventh day after the entry of judgment. Therefore, the motion was untimely, and the circuit court was not given an opportunity to rule on it. *Middleton v. Lockhart*, 2012 Ark. 131, 388 S.W.3d 451.

Affirmed.

GRUBER, C.J., and HIXSON, J., agree.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Robert K. Rhoads* and *M. Scott Hall*, for appellant.

*Millar Jiles, LLP*, by: *Gary D. Jiles* and *Matthew K. Brown*, for appellee.